2025 IL App (1st) 250028

FIFTH DIVISION
October 10, 2025

No. 1-25-0028

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| ANDREW LUTZENKIRCHEN, as the Independent Administrator of the Estate of William J. Lutzenkirchen, Deceased, | ) ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | |
| OSF HEALTHCARE SYSTEM, d/b/a OSF Saint Anthony Medical Center; NORTH AMERICAN PARTNERS IN ANESTHESIA (ILLINOIS), LLC; DORIS ELIZABETH ORE SOSA, M.D. Individually and as an Agent, Apparent Agent and/or Employee of OSF Healthcare System and North American Partners in Anesthesia (Illinois), LLC; SCOTT ANDREW GIRARD, M.D. Individually and as an Agent, Apparent Agent and/or Employee of OSF Healthcare System and North American Partners in Anesthesia (Illinois), LLC; AMORY SORIANO BALUCATING, Individually and as an Agent, Apparent Agent and/or Employee of OSF Healthcare System and North American Partners in Anesthesia (Illinois), LLC; RAFAL BOGUSLAW BANEK, Individually and as an Agent, Apparent Agent and/or Employee of OSF Healthcare System and North American Partners in Anesthesia (Illinois), LLC; JENNIFER CLAIR LANE, D.O., Individually and as an Agent, Apparent Agent and/or Employee of OSF Healthcare System and North American Partners in Anesthesia (Illinois), LLC; and JOYCE CHENG, M.D., Individually and as an Agent, Apparent Agent and/or Employee of OSF Healthcare System and North American Partners in Anesthesia (Illinois), LLC, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County  No. 2024 L 05546  The Honorable Charles S. Beach, II, Judge, presiding. |

)
)
       Defendants-Appellants.        )
)
)

JUSTICE TAILOR delivered the judgment of the court, with opinion.
Justice Mikva concurred in the judgment and opinion.
Justice Oden Johnson specially concurred, with opinion.

**OPINION**

¶ 1     This case presents an interlocutory review of an order denying defendants' motion to transfer venue based on the equitable doctrine of *forum non conveniens*. We review such decisions under the highly deferential abuse of discretion standard. In this medical malpractice case, the decedent was treated and died at a hospital in Rockford, Illinois, which is located in Winnebago County. Suit was filed by the decedent's son in Cook County, a forum with hardly any connection to this action. Because the substantial majority of the private and public interest factors here strongly weigh in favor of transfer and the remaining factors are neutral, we find the circuit court abused its discretion when it denied defendants' motion to transfer venue and, therefore, reverse and remand for this matter to be transferred to Winnebago County.

¶ 2                                    I. BACKGROUND

¶ 3     Plaintiff, Andrew Lutzenkirchen, filed a medical malpractice action in the circuit court of Cook County against defendants OSF Saint Anthony Medical Center (OSF), a hospital in Rockford, Illinois; Joyce Cheng, M.D.; Dorie Ore Sosa, M.D.; Scott Andrew Girard, M.D., Amory Balucating, CRNA; Rafal Banek, CRNA; North American Partners in Anesthesia (Illinois), LLC (NAPA); and Jennifer Claire Lane, D.O. The complaint alleges that plaintiff's decedent and father, William J. Lutzenkirchen (William), died at OSF due to defendants' negligent treatment. William was admitted to OSF on June 27, 2023, for a nonhealing wound on

2

his left toe. During a surgical procedure on July 3, 2023, defendants were allegedly negligent in lacerating William's palate and uvula while providing anesthesia services, which ultimately led to his death following a code blue on July 5, 2023. OSF provided all medical care and treatment to William in Winnebago County between June 27, 2023, and July 5, 2023.

¶ 4    William was a resident of Stephenson County, which is immediately west of Winnebago County. He is survived by his four children: plaintiff, Maureen, Ellyn, and Michael. Plaintiff resides in Kane County, Maureen resides in Winnebago County, Ellyn resides in Stephenson County, and Michael resides in Georgia.

¶ 5    After plaintiff filed the complaint, defendants Dr. Sosa, nurse anesthetist Balucating, nurse anesthetist Banek, and NAPA—who were later joined by OSF, Dr. Cheng, and Dr. Lane— moved to transfer venue pursuant to the doctrine of *forum non conveniens*, arguing that Cook County was an inconvenient forum and that the case should be transferred to Winnebago County. They argued that Winnebago County is a more convenient forum because (1) all medical care relevant to William occurred at OSF in Winnebago County; (2) plaintiff resides in Kane County, and his travel distance to either Cook or Winnebago County is approximately the same; (3) only two Defendants reside in Cook County, whereas all Defendants work in or near Winnebago County; and (4) public interest factors weigh in favor of transfer because Cook County's docket is more congested, residents of Winnebago County have a stronger interest in hearing the case, and imposing the burden of jury service on Cook County residents would be inequitable.

¶ 6    Defendants submitted several pieces of evidence to support their position, including affidavits from Dr. Cheng, Balucating, and Dr. Lane. In her affidavit, Dr. Cheng averred that she resides in Kane County and works full time at OSF in Winnebago County. She stated that attending trial in Cook County would interfere with her clinical duties, whereas she could

continue working while attending court in Winnebago County due to the short distance between the courthouse and OSF. In her affidavit, Balucating averred that she resides in McHenry County and works full time in Winnebago County. She averred that attending trial in Cook County would require significantly more travel than attending trial in Winnebago County. In her affidavit, Dr. Lane averred that she is currently a Minnesota resident. She explained that she has access to housing in Winnebago County with friends, whereas staying in Cook County for trial would result in higher financial costs due to the need for accommodations and meals.

¶ 7 Additional evidence submitted by defendants included Google Maps estimates showing comparable driving times from plaintiff's home in Kane County to both courthouses— approximately 1 hour and 13 minutes to Winnebago County and 1 hour and 16 minutes to Cook County. Defendants also included probate documents listing addresses for William's three other children: one lives in Winnebago County, another in Stephenson County (adjacent to Winnebago), and the third in Georgia. Finally, Defendants submitted official Illinois Courts data showing a significantly higher caseload in Cook County compared to Winnebago County.

¶ 8 In response, plaintiff argued that venue should remain in Cook County because (1) his choice of forum is entitled to strong deference; (2) Winnebago County is not convenient for all parties, particularly plaintiff and his brother, Michael, for whom travel to Winnebago County would be burdensome; (3) some defendants live and work in Cook County; (4) OSF also has healthcare at facilities in Cook County; (5) it is unlikely that anyone would need to visit the site of the injury or be physically present for testimony; and (6) Cook County is better equipped to manage a busy docket than Winnebago County.

¶ 9 For support, plaintiff submitted affidavits from himself and his brother Michael, as well as answers to interrogatories from Dr. Sosa and Dr. Girard, which indicate that they reside in

Cook County. In his affidavit, plaintiff averred that Cook County would be a substantially more convenient forum for him than Winnebago County because attending trial in Cook County would allow easier access to the courthouse and legal counsel, while a trial in Winnebago County would create significant travel burdens and interfere with his work obligations and family responsibilities, including teaching and childcare commitments. Michael explained in his affidavit that Cook County would be a more convenient trial location for him because he lives in Georgia and can access Chicago via direct flights from Atlanta. He stated that he would stay either in the city or with his brother in Kane County. A trial in Winnebago County would require him to rent a car or depend on his sibling for transportation, resulting in added expense and logistical difficulty.

¶ 10    The circuit court denied defendants' motion to transfer venue. Regarding plaintiff's choice of venue, the court found that "[w]hile a plaintiff's choice of forum is usually given strong deference, because Plaintiff does not reside in Cook County and the action did not arise from there, this deference is reduced."

¶ 11    Additionally, the court recognized that certain private interest factors—such as the convenience of most parties, the accessibility of live testimony, and the location of the events—favored a transfer to Winnebago County. Nevertheless, the court found Cook County to be a proper venue, giving minimal weight to public interest factors.

¶ 12    Specifically, the court stated:

"As for the private interest factors, Winnebago County is more convenient for many of the parties because most of the Defendants either live in Winnebago County or work there as medical professionals. However, this does not apply to all of the defendants as some live in Cook County. As the action arose from Winnebago County, it would appear to be easier

for the parties and the court in Winnebago County to access the testimonial, documentary, and real evidence of this case. However, the distance between Winnebago and Cook County[ ] does not preclude Cook County handling this matter. Both the Winnebago Court and the Cook Court will be capable of securing the attendance of unwilling witnesses and compulsory process. As many of the witnesses live or work in Winnebago County, it may be less expensive to produce the attendance of willing witnesses there.

Since virtually all of the relevant facts that make up the subject matter of this case occurred at OSF Saint Anthony Medical Center in Rockford, Winnebago County, Illinois, and more of the party members and witnesses and much of the evidence are in or closer to Winnebago County than they are to Cook County, Winnebago County is the more convenient forum when it comes to private interest factors. As a final note on private interest factors, while it may be true that witnesses can be deposed anywhere, Illinois courts have recognized that 'depositions are an inadequate substitute for live testimony,' and if deposition testimony is required at trial in place of live testimony due to the burden and expense of witness travel, the out-of-venue party would be disadvantaged. *Moore v. Chicago & N.W. Transp. Co.*, 99 Ill. 2d 73, 80, 457 N.E.2d 417, 420 (1983).

As for the public interest factors, since OSF Healthcare System operates in both Winnebago and Cook County this factor is given little weight. While Cook County might have more means of handling a large docket than Winnebago County, that doesn't change the fact that at any one time Cook County still has a vastly larger docket than Winnebago County does. This factor thus is given little weight.

Therefore, this Court uses its sound discretion [and] finds that the totality of the factors [favor] retaining Cook County as the forum for this matter."

6

¶ 13    Defendants appealed the denial of their *forum non conveniens* motion by filling a petition for leave to appeal pursuant to Illinois Supreme Court Rule 306(a)(2) (eff. Oct. 1, 2020). We granted the petition, and this appeal follows.

¶ 14                                    II. ANALYSIS

¶ 15    Defendants argue that the circuit court abused its discretion when it denied their motion to transfer venue. They argue that the circuit court inaccurately weighed the private interest factors and failed to adequately consider the public interest factors under the doctrine of *forum non conveniens*, which clearly support transferring the case to Winnebago County. Plaintiff argues that the circuit court did not abuse its discretion in denying defendants' motion to transfer venue and properly weighed all *forum non conveniens* factors.

¶ 16                          A. Doctrine of *Forum Non Conveniens*

¶ 17    "*Forum non conveniens* is an equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006) (citing *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)). Courts use the doctrine of *forum non conveniens* to determine the most appropriate forum when multiple jurisdictions have authority over the parties and subject matter of a case. *Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 105 (1990). This doctrine allows a trial court to decline jurisdiction when trial in another forum "would better serve the ends of justice." *Vinson*, 144 Ill. 2d at 310.

¶ 18    To determine whether to grant a party's motion to transfer venue under the doctrine of *forum non conveniens*, courts examine the private interest factors, which relate to the convenience of the litigants and the practicalities of conducting the trial, as well as the public interest factors, which concern the efficient administration of justice and the connection of the

litigation to the forum. *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 172-73 (2003). In this balancing test, "no single factor is controlling." *Erwin v. Motorola, Inc.*, 408 Ill. App. 3d 261, 274 (2011) (citing *Langenhorst*, 219 Ill. 2d at 443). Ultimately, a trial court must weigh all relevant considerations—including the private and public interest factors as well as the plaintiff's choice of forum—to determine whether the chosen venue will best serve the ends of fairness and justice. *Fennell v. Illinois Central R.R. Co.*, 2012 IL 113812, ¶ 17.

¶ 19                                B. Standard of Review

¶ 20    We will reverse the trial court's ruling on a *forum non conveniens* motion only if the court abused its discretion. *Dawdy*, 207 Ill. 2d at 177. Under this deferential standard of review, two judges presented with the very *same* facts could weigh the relevant factors differently and arrive at opposite results, and "both decisions would be upheld on appeal unless it could be said that no reasonable person would conclude as those circuit courts did." *Starr v. Presence Central & Suburban Hospitals Network*, 2024 IL App (1st) 231120, ¶ 70. See also *Vivas v. The Boeing Co.*, 392 Ill. App. 3d 644, 657 (2009) ("The issue *** is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the trial court acted in a way that no reasonable person would.")

¶ 21    In assessing whether the circuit court abused its discretion when it denied defendants' motion to transfer venue here, we first consider plaintiff's selected forum and then turn to the applicable private and public interest factors.

¶ 22                            C. Plaintiff's Choice of Forum

¶ 23    Courts typically defer to a plaintiff's choice of forum when the plaintiff resides in the county where the claim is filed. *Dawdy*, 207 Ill. 2d at 173 (" 'When the home forum has been chosen, it is reasonable to assume that this choice is convenient.' " (quoting *Piper Aircraft Co. v.*

*Reyno*, 454 U.S. 235, 255-56 (1981))). When the plaintiff or the real parties in interest reside outside the forum, however, this assumption loses force, and courts afford the plaintiff's choice less deference. *Id.* at 173-74. A plaintiff's choice of forum will also be accorded less deference if the action giving rise to the litigation did not occur there. *Fennell*, 2012 IL 113812, ¶ 18; *Wieser v. Missouri Pacific R.R. Co.*, 98 Ill. 2d 359, 367-68 (1983) (holding that plaintiff's choice of forum was entitled to less deference where the forum lacked a significant connection to the litigation).

¶ 24    Defendants argue plaintiff's choice of forum should be given little to no deference because he "is attempting to game Illinois' procedural rules to fix venue in Cook County, a forum with no substantive connection of any kind to the allegations Plaintiff has brought in this suit". Courts consistently disfavor forum shopping. *Dawdy*, 207 Ill. 2d at 174-75. Our supreme court underscored this principle by explaining that "[d]ecent judicial administration cannot tolerate forum shopping as a persuasive or even legitimate reason for burdening communities with litigation that arose elsewhere and should, in all justice, be tried there." *Fennell*, 2012 IL 113812, ¶ 19 (citing *Dawdy*, 207 Ill. 2d at 175). While forum shopping is disfavored, we do not consider this practice in our *forum non conveniens* analysis. *Dawdy*, 207 Ill. 2d at 175.

¶ 25    The circuit court found that "[w]hile a plaintiff's choice of forum is usually given strong deference, because Plaintiff does not reside in Cook County and the action did not arise from there, this deference is reduced." We agree. Because plaintiff does not reside in Cook County and the incidents giving rise to this incident did not occur in Cook County, plaintiff's choice of forum is entitled to little deference. See *Smith v. Walgreen Co.*, 2024 IL App (5th) 240394, ¶ 19 ("when the plaintiff is foreign to the chosen forum and the action that gave rise to the litigation did not occur in the chosen forum, 'it is reasonable to conclude that the plaintiff engaged in

forum shopping to suit his individual interests, a strategy contrary to the purposes behind the venue rules' " (quoting *Dawdy*, 207 Ill. 2d at 174)). We turn now to the private interest and public interest factors.

¶ 26                                    D. Private Interest Factors

¶ 27    The private interest factors are

   "(1) the convenience of the parties; (2) the relative ease of access of sources of

   testimonial, documentary, and real evidence; (3) the availability of compulsory process to

   secure attendance of unwilling witnesses; (4) the cost to obtain attendance of willing

   witnesses; (5) the possibility of viewing the premises, if appropriate; and (6) all other

   practical considerations that make trial of a case easy, expeditious, and inexpensive."

   *Larson v. Illinois Central School Bus, LLC*, 2023 IL App (3d) 220360, ¶ 20.

The court must take all relevant factors into account and assign appropriate weight to each factor when deciding whether to grant a party's *forum non conveniens* motion to transfer venue. *Griffith*, 136 Ill. 2d at 107-08. We address each private interest factor in turn.

¶ 28                                    1. Convenience of Parties

¶ 29    The circuit court found "Winnebago [C]ounty is a more convenient forum for many of the parties because most of the Defendants either live in Winnebago County or work there as medical professionals." It also stated that "this does not apply to all of the defendants as some live in Cook County."

¶ 30    The record supports the circuit court's conclusion and shows that Winnebago County is the more convenient forum for the large majority of defendants. The alleged negligence occurred at OSF, which is located in the city of Rockford, Winnebago County, and all defendants either currently practice or have previously practiced there. See *Larson*, 2023 IL App (3d) 220360,

¶¶ 22-27 (holding that the forum connected to the injury, witnesses, and evidence was the proper venue). Defendant Dr. Cheng practices exclusively at OSF and resides in Kane County. Defendant nurse anesthetist Balucating resides in McHenry County, which is closer to Winnebago County than to Cook. Defendant nurse anesthetist Banek lives in Lake County and primarily provides care in Winnebago County. Defendant Dr. Lane also stated in her affidavit that Winnebago County would be a significantly more convenient venue for her. Although she now lives in Minnesota, she previously worked at OSF and lived in Winnebago County.

¶ 31    Although plaintiff argues that Cook County is a more convenient venue for defendants Dr. Girard and Dr. Sosa because they reside in Cook County, his contention is not borne out by the record. Dr. Girard lives in Cook County; however, the record reflects that the travel time from his residence to either the Cook or Winnebago County courthouse would be comparable.

¶ 32    The only defendant for whom Cook County would arguably be a more convenient forum is Dr. Sosa, because she resides and works in Cook County. The record reflects that she practices at several hospitals in Cook County, including John H. Stroger Jr. Hospital, the Rubschlager Endoscopy Clinic at Rush University, and AMITA Health Saint Joseph. However, the fact that two of the six defendants live in Cook County and one of them practices there cannot counteract the fact that, overall, Winnebago County would be a far more convenient forum for the large majority of the parties.

¶ 33    Indeed, Winnebago County would also be a more convenient forum for William's daughter Maureen, who resides in Winnebago County, and his daughter Ellyn, who resides in nearby Stephenson County. They live significantly closer to the Winnebago courthouse than the Cook County courthouse in the Chicago Loop.

¶ 34    Although plaintiff and his brother asserted in their affidavits that Cook County would be a more convenient forum for them, this assertion is questionable, as the record reflects that plaintiff's commute from his residence to the Daley Center in Cook County would be nearly the same as his commute to the Winnebago County Courthouse, and his brother acknowledged he would likely either be staying with plaintiff or in Cook County. Thus, when weighing convenience of all parties, we agree with the circuit court and find this factor soundly supports transfer to Winnebago County.

¶ 35                                    2. Ease of Access to Evidence

¶ 36    Turning to the location of the underlying events and the accessibility of evidence, the circuit court correctly observed that "as the action arose from Winnebago County, it would … [be] easier for the parties and the court in Winnebago County to access the testimonial, documentary, and real evidence of this case." The circuit court's conclusion is supported by the record: the alleged negligence occurred at OSF in Winnebago County, and most of the potential witnesses are OSF employees who work there. See *id.* ¶ 27 (holding Texas was the more appropriate forum where the injury occurred there, the key witnesses and medical providers were located there, and documentary evidence—such as employment and maintenance records—was more easily accessible there). While the court acknowledged that depositions may be taken regardless of a party or witness's location, it emphasized that "depositions are an inadequate substitute for live testimony." We agree and find that the ability to present live testimony further supports transfer to Winnebago County, where a majority of the witnesses are located.

¶ 37    Illinois courts have emphasized that the convenience of accessing willing witnesses and documentary evidence remains a central consideration. See *Fennell*, 2012 IL 113812, ¶¶ 36, 39. All relevant documents, including medical records, are located at OSF in Rockford, where the

events giving rise to the claim occurred. Therefore, we agree with the circuit court that the ease of access to witnesses and evidence favors transfer to Winnebago County.

¶ 38                             3. Availability of Compulsory Process

¶ 39     The circuit court determined that this factor was not relevant to the analysis because "both the Winnebago court and the Cook court are capable of securing the attendance of unwilling witnesses through compulsory process," making this factor neutral in weighing the private interest factors. See *Meier v. Ryan*, 2023 IL App (1st) 211674, ¶ 37 (finding the availability of compulsory process for unwilling witnesses to be a neutral factor since " '[a] judge in either Cook or DuPage County would have equal authority to subpoena unwilling witnesses' "). We agree that the availability of compulsory process is a neutral factor.

¶ 40                                 4. Cost of Attendance

¶ 41     The court acknowledged that "many of the witnesses live or work in Winnebago County, [so] it may be less expensive to procure the attendance of willing witnesses," and found that transferring venue to Winnebago County would improve trial fairness and reduce associated costs. We agree and find that the circuit court's conclusions are supported by the record. The large majority of the parties and witnesses—including medical providers employed at OSF—live or work in Winnebago County or nearby. Several submitted affidavits explaining the burden of attending proceedings in Cook County.

¶ 42     Thus, the record reflects that the large majority of witnesses and defendants are more closely connected to Winnebago County and would face greater inconvenience if the case were tried in Cook County. Dr. Lane, for example, emphasized the comparative ease and reduced expense of appearing in Winnebago County, where she previously resided and could stay with friends. See *Botello v. Illinois Central R.R. Co.*, 348 Ill. App. 3d 445, 456 (2004) (finding

13

transfer to DuPage County was justified based on a number of factors, including the fact that the majority of witnesses lived or worked in DuPage County and would face undue burden if the case was litigated elsewhere).

¶ 43                         5. View of the Premises

¶ 44      Illinois courts consider the possibility—rather than the necessity—of viewing the site where the events occurred as a relevant private interest factor. See *Fennell*, 2012 IL 113812, ¶ 37; *Dawdy*, 207 Ill. 2d at 178 (stating that this factor "is not concerned with the *necessity* of viewing the site of the injury, but rather is concerned with the *possibility* of viewing the site, if appropriate" (emphases in original)). While rarely applicable in medical malpractice cases, courts still weigh whether a view may be appropriate. See *Hackl v. Advocate Health & Hospitals Corp.*, 382 Ill. App. 3d 442, 452 (2008).

¶ 45      Defendants argued this factor supports transfer because all relevant events occurred at OSF in Winnebago County, but the circuit court did not address this factor at all. While the possibility of a site visit to OSF in Winnebago County may be unlikely, it still should have been considered by the circuit court. *Fennell*, 2012 IL 113812, ¶ 24 ("remind[ing] *** trial courts to include all of the relevant private and public interest factors in their analyses"). See *Kuhn v. Nicol*, 2020 IL App (5th) 190225, ¶ 15 (noting that although a jury view is unlikely in a medical malpractice case, the decision rests with the trial court, and if such a view were deemed necessary by the trial court, it would be unreasonable to require a St. Clair County jury to travel to Clinton County).

¶ 46                       6. Practical Considerations

¶ 47      The final private interest factor is practical considerations that would make a trial more efficient and inexpensive. *Evans*, 2020 IL App (1st) 200528, ¶ 32. Defendants argue that it

would be a "great injustice to require witnesses to travel four hours round-trip by car to provide testimony at trial when the Winnebago County Courthouse . . . would be so much more convenient and economical for all of them."

¶ 48    The circuit court agreed and found that this factor favored transfer, stating that:

> "[s]ince virtually all of the relevant factors that make up the subject matter of this case occurred at OSF Saint Anthony Medical Center in Rockford, Winnebago County, Illinois, and more of the party members and witnesses and much of the evidence are in or closer to Winnebago County than they are to Cook County, Winnebago County is the more convenient forum when it comes to private interest factors."

¶ 49    When evaluating practical considerations such as travel, traffic, convenience, and witness availability, the record supports the circuit court's finding that Winnebago County is clearly the more convenient forum. Defendants who work in Winnebago County could continue treating patients without disruption if the case were transferred to Winnebago County. If the case remained in Cook County, they would face disruption in their medical practices if required to appear in court. For plaintiff, the comparative travel time to either the Winnebago or Cook County courthouses is the same.

¶ 50    Although plaintiff asserts that Cook County is the more practical forum because his attorneys' offices are located there, the location of parties' attorneys is given little weight in *forum non conveniens* cases. See, *e.g.*, *Hale v. Odman*, 2018 IL App (1st) 180280, ¶¶ 47, 60, 63 (reversing the denial of a motion to transfer venue to Kane County where the accident, witnesses, and evidence were in Kane County, and practical considerations, like travel and cost, favored Kane

County, even though the plaintiff's attorneys were based in Cook County, noting that the location of parties' attorneys should be given "little weight").

¶ 51    Taken together, we agree with the circuit court's conclusion that the private interest factors overwhelmingly support transfer. We turn now to the public interest factors.

¶ 52                                E. Public Interest Factors

¶ 53    The relevant public interest factors are (1) administrative difficulties arising from court congestion, (2) the unfairness of imposing jury duty on residents of a forum unconnected to the litigation, and (3) the interest in having local controversies decided locally. *Dawdy*, 207 Ill. 2d at 173. As with the private interest factors, no single public interest factor is controlling. *Meier*, 2023 IL App (1st) 211674, ¶ 19 (citing *Langenhorst*, 219 Ill. 2d at 443).

¶ 54                                1. Court Congestion

¶ 55    A central goal of the *forum non conveniens* doctrine is to ensure that litigation proceeds in the forum best suited to serve both the convenience of the parties and the efficient administration of justice. *Langenhorst*, 219 Ill. 2d at 441. That goal becomes difficult to achieve when a case is heard in a forum with minimal connection to the dispute and a heavily burdened docket, limiting the time and attention the case can receive. *Smith*, 2024 IL App (5th) 240394, ¶¶ 30-31.

¶ 56    Plaintiff argues that the 2023 Annual Report from the Illinois Supreme Court demonstrates that new case filings are down significantly across the state and therefore it would not be burdensome for Cook County to hear this matter. However, this statewide trend does little to advance plaintiff's point. If filings are down everywhere, that includes Winnebago County, so the statewide decline in 2023 fails to address the relative docket burdens between counties. The record from the 2023 Annual Report Statistical Summary confirms that Cook County had 161,064 new civil case filings compared to only 9,110 in Winnebago County. Admin. Off. of the Ill. Cts., 2023

16

Annual Report of the Illinois Courts, Statistical Summary 46, 49 (2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/2e8fe39f-d040-47ee-a2b5-d53880fccb19/2023%20Annual%20Report%20Statistical%20Summary.pdf [https://perma.cc/B5UG-5ABQ]. Therefore, although Cook County may be better equipped to manage a higher volume of cases because it has more judges, the disparity between the caseloads in the two forums is still substantial. When addressing the public interest factors, the circuit court acknowledged as much, stating that "Cook County might have more means of handling a large[r] docket than Winnebago County." However, because "at any one time, Cook County still has a vastly larger docket than Winnebago County[,]" the circuit court accorded this factor "little weight."

¶ 57    We disagree with the circuit court's decision to accord this factor little weight and find that it favors transfer to Winnebago County. Considering its substantially higher volume of cases and rate of growth of its docket, Cook County's ability to handle a larger docket does not mean that it would be better equipped to resolve this case in a more timely and efficient manner. In *Botello*, 348 Ill. App. 3d at 459-60, the court documented Cook County's significantly slower time to verdict than DuPage County and relied on this fact to support its conclusion that the public interest factors, including court congestion in Cook County, warranted transfer to DuPage County. It would be pertinent to our analysis to review Winnebago's and Cook County's time to verdict here, but Cook County reported no data regarding disposition times in 2022 or 2023, making it impossible for us to do so. In *Matthiessen* v. *Greenwood Motor Lines, Inc.*, 2021 IL App (1st) 200405-U, ¶ 19, the court similarly found that court congestion favored transfer to Kane County when docket data showed that Kane County was less burdened than Cook County.

The record here reflects that, as of 2022, Winnebago County had significantly fewer civil filings than Cook County and maintained a comparatively smaller docket overall.

¶ 58    This court also takes judicial notice of more recent publicly available data showing that the number of new civil cases filed in 2024 alleging damages over $50,000 in Winnebago County was 398, while in Cook County it was 15,060. See *Washington v. Illinois Power Co.*, 144 Ill. 2d 395, 403 (1991) (finding the annual report of the Administrative Office of the Illinois courts to be "a proper source of reference in assessing court congestion"); *Boston v. Rockford Memorial Hospital*, 140 Ill. App. 3d 969, 972 (1986) (this court may take judicial notice of matters not presented to the trial court if they are capable of instant and unquestionable demonstration, such as the contents of a circuit court docket (citing *May Department Stores Co. v. Teamsters Union Local No. 743*, 64 Ill. 2d 153, 159 (1976))). For comparison, the record reflects that in 2023, there were 480 new case filings in Winnebago County and 13,107 in Cook County. Admin. Office of the Ill. Courts, 2023 Annual Report of the Illinois Courts, Statistical Summary 46, 49 (2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/2e8fe39f-d040-47ee-a2b5-d53880fccb19/2023%20Annual%20Report%20Statistical%20Summary.pdf [https://perma.cc/B5UG-5ABQ]. This data indicates a consistent trend: Cook County continues to experience a substantially higher volume of high-dollar civil filings. More importantly, the rate of growth of Cook County's docket is substantially higher than Winnebago County's. In 2024, Cook County began the year with 498,378 pending cases and ended the year with 694,554 pending cases, representing a 39.4% growth in its case load. Admin. Off. of the Ill. Cts., Civil Caseload Statistics by County Circuit Courts of Illinois, First Quarter 2024, https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/ac25a33d-d20a-4fe1-

8084-1bf6ddeaf1e4/Civil%20Caseload%20Statistics%20by%20County.pdf (last visited Sept. 28, 2025) [https://perma.cc/9TGG-N3S7]; Admin. Off. of the Ill. Cts., Civil Caseload Statistics by County Circuit Courts of Illinois, Fourth Quarter 2024, https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/9b746ac2-8756-472f-b27b-8f0d8330b704/Civil%20Caseload%20Statistics%20by%20County.pdf (last visited Sept. 28, 2025) [https://perma.cc/N6DR-PQX4]. During the same period, Winnebago County experienced a decrease in its case load, going from 61,783 pending cases at the beginning of the year to 59,372 cases at the end of the year, a 3.9% decrease in case load. Admin. Off. the Ill. Cts., Civil Caseload Statistics by County Circuit Courts of Illinois, First Quarter 2024, https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/ac25a33d-d20a-4fe1-8084-1bf6ddeaf1e4/Civil%20Caseload%20Statistics%20by%20County.pdf (last visited September 28, 2025) [https://perma.cc/9TGG-N3S7]; Admin. Off. of the Ill. Cts., Civil Caseload Statistics by County Circuit Courts of Illinois, Fourth Quarter 2024, https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/9b746ac2-8756-472f-b27b-8f0d8330b704/Civil%20Caseload%20Statistics%20by%20County.pdf (last visited Sept. 28, 2025) [https://perma.cc/N6DR-PQX4]. The statistics from 2023 show a similar disparity— Cook County experienced a 64% increase in its case load in 2023 compared to a 1% increase in Winnebago County. Admin. Off. of the Ill. Cts., 2023 Annual Report of the Illinois Courts, Statistical Summary 19 (2024), https://ilcourtsaudio.blob.core.windows.net/antilles-resources/resources/2e8fe39f-d040-47ee-a2b5-d53880fccb19/2023%20Annual%20Report%20Statistical%20Summary.pdf [https://perma.cc/B5UG-5ABQ]. Given this significant disparity in docket growth rates, we find

that the circuit court erred by giving "little weight" to court congestion in its

*forum non conveniens* analysis. This factor favors transfer.

¶ 59                           2. Unfairness of Imposing Jury Duty

¶ 60    Another key public interest factor is "the unfairness of imposing jury duty upon residents of a county with no connection to the litigation." *Dawdy*, 207 Ill. 2d at 173; see *Fennell*, 2012 IL 113812, ¶ 45 (" 'Jury duty constitutes a burden to the citizens of a county who must serve on the jury. The county in which the trial is held is financially burdened by the payment of jurors' fees and by providing court personnel and court facilities.' " (quoting *Wieser*, 98 Ill. 2d at 371)). This principle underscores that jurors should not be asked to resolve disputes that have no relevance to their community or impact on their lives. *Blakey v. Gilbane Building C*o., 264 Ill. App. 3d 626, 629-30 (1994) (stressing the importance of trying cases in forums with meaningful ties to the litigation to avoid burdening unrelated communities).

¶ 61    Here, the circuit court did not address the burden of jury duty at all. We find this was a significant omission. The principle is not merely administrative; it reflects a broader concern for civic fairness and efficient resource allocation. *Id.* Jurors are drawn from their communities to adjudicate disputes that affect those communities. Requiring them to resolve controversies rooted in unrelated jurisdictions undermines this core function. To illustrate, in *Fennell*, the plaintiff, a Mississippi resident, filed a personal injury suit in St. Clair County, Illinois, alleging workplace exposure to asbestos while employed by the defendant railroad. *Fennell*, 2012 IL 113812, ¶ 3. The defendant moved to dismiss under the interstate doctrine of *forum non conveniens*, arguing that Mississippi was the more appropriate forum given the location of the alleged exposure, the witnesses, and the plaintiff's residence. *Id.* ¶ 7. In addressing the public interest factors, our supreme court stated that "[j]ury duty constitutes a burden to the citizens of a county who must

20

serve on the jury," and that burden extends to the county's financial and logistical responsibilities. (Internal quotation marks omitted.) *Id.* ¶ 45. It found that dismissal based on the doctrine of *forum non conveniens* was warranted, reasoning that the citizens of St. Clair County should not be asked to bear the burden of this lawsuit where the events and witnesses were tied to Mississippi. *Id.* ¶ 46.

¶ 62    This same rationale applies here. William was treated in Winnebago County, all the allegedly negligent conduct occurred there, and the witnesses and parties are primarily based there. Other than the fact that one defendant works in Cook County and two defendants live there, Cook County and its jurors bear no relationship to the events, individuals, or institutions involved in this case. Because the record reflects an absence of connection between the litigation and Cook County, the jury burden factor favors transfer. See *Matthiessen*, 2021 IL App (1st) 200405-U, ¶ 20 (finding the jury burden weighed in favor of transferring the case to Kane County given the case's lack of factual ties to Cook County); *Monteagudo v. The Gardens of Belvidere, LLC*, 2023 IL App (1st) 220045, ¶¶ 54, 56 (reversing the trial court's denial of defendant's *forum non conveniens* motion, finding that because the alleged negligence occurred at a medical facility in Boone County, its residents had a "significant interest in this case" and it would "not be unfair to burden the residents of Boone County with jury duty" whereas "Cook County residents should *** not be burdened with jury duty when the cause of action did not occur there and had minimal connection there"); *cf. Starr*, 2024 IL App (1st) 231120, ¶¶ 58, 69, 70, 72 (finding that the trial court did not abuse its discretion when it denied defendants' motion to transfer venue to Will County where the alleged medical negligence occurred because plaintiff was subsequently transferred to a Cook County hospital and received extensive follow up care

there, demonstrating "a connection between the alleged acts of negligence and the people of Cook County" and giving Cook County residents an interest in the case).

¶ 63                                   3. Local Controversies

¶ 64     Illinois courts have consistently recognized that the forum where the events giving rise to the litigation occurred holds the strongest interest in resolving the dispute. See *Foster v. Chicago & North Western Transportation Co.*, 102 Ill. 2d 378, 383 (1984) ("This court has consistently held that a case should not be tried in a forum that has no significant factual connections to the cause of action."). This principle is consistently reflected in case law, which emphasizes that the location where the events occurred, along with the residency of the parties and witnesses, plays a central role in determining the proper forum. See *Adamian v. Balash*, 2024 IL App (1st) 231876, ¶ 26; *Larson*, 2023 IL App (3d) 220360, ¶ 27. In *Monteagudo*, 2023 IL App (1st) 220045, ¶ 52, the court found that the local controversy public interest factor favored transfer, reasoning that because "plaintiff's allegations of medical negligence arise out of the medical care the decedent received at [a long-term care facility] in Boone County," "Boone County has a clear interest in the medical care provided to its residents at its medical facilities."

¶ 65     Similarly here, the alleged negligence occurred at OSF in Rockford, which is in Winnebago County. All relevant medical records, witnesses—including treating physicians and medical staff—and the events giving rise to plaintiff's claim are located in Winnebago County or nearby, showing that Winnebago County has the strongest interest in resolving the dispute. Nevertheless, the circuit court gave "little weight" to this factor because "OSF Healthcare System operates in both Winnebago and Cook County." But Illinois courts, including our supreme court, have repeatedly held that conducting the same business in another forum does not establish a substantial connection to litigation arising from events elsewhere. *Id.* ¶ 53 (stating that

"merely conducting business in Cook County does not affect the *forum non conveniens* issue");
*Gundlach v. Lind*, 353 Ill. App. 3d 677, 683 (2004) (reversing denial of a motion to transfer and holding that defendants' business operations in Cook County were insufficient to establish a substantial local interest where the alleged malpractice occurred in McHenry County and plaintiffs resided in Lake County, emphasizing that localized controversies should be resolved in the community where the events occurred); *Dawdy*, 207 Ill. 2d at 182 (rejecting argument that the fact that the railroad also operated in the plaintiff's chosen forum made transfer improper and recognizing that accepting such an argument could elevate plaintiff's choice of forum to dispositive status and thereby vitiate the *forum non conveniens* doctrine). Therefore, the circuit court erred when it gave little weight to the fact that the alleged malpractice occurred in Winnebago County simply because OSF also provides healthcare in Cook County.

¶ 66    None of the events giving rise to plaintiff's claim occurred in Cook County, and the large majority of defendants practice medicine exclusively in Winnebago County. While the record indicates that Dr. Sosa practices at several hospitals in Cook County, most defendants primarily practice at OSF in Winnebago County, and there is no indication that any other defendant possesses a substantial or regular practice in Cook County sufficient to establish a meaningful local interest. In *Meier*, this court affirmed the trial court's decision to transfer a medical negligence case from Cook County to DuPage County based on the doctrine of *forum non conveniens*, even though a few of the individual defendants resided in Cook County and provided medical services there. *Meier*, 2023 IL App (1st) 211674 ¶¶ 24, 26-28. The court concluded that despite some connections to Cook County, all relevant medical treatment occurred at a single hospital in DuPage County, and therefore, the local interest and convenience factors favored transfer. *Id.* ¶¶ 28, 43.

¶ 67    The same logic applies here. As in *Meier*, the alleged negligence occurred entirely within a single hospital, OSF in Winnebago County. While the record reflects that Dr. Sosa maintains a practice in Cook County, no other defendant maintains a substantial or regular practice there, and most are primarily based in Winnebago County. That plaintiff does not reside in Cook County further weakens any claim of local interest. As in *Meier*, incidental connections to Cook County do not outweigh the strong ties to the alternate forum or justify burdening courts and jurors in a county with minimal ties to the litigation.

¶ 68    Plaintiff's reliance on *Evans*, 2020 IL App (1st) 200528, is misplaced. In *Evans*, the court denied defendants' motion to transfer venue to Lake County where the record established that the defendant doctor resided and practiced in Cook County, and the other *forum non conveniens* factors did not strongly favor transfer. *Id.* ¶¶ 23-24. Here, by contrast, the private and public interest factors weigh in favor of transfer, and Dr. Sosa's ties to Cook County do not outweigh the strong factual nexus to Winnebago County.

¶ 69    Time and again, this court has held that fairness requires resolving local controversies in the forums most closely connected to the events. See *Larson*, 2023 IL App (3d) 220360, ¶ 27 (reversing the trial court's decision to deny defendant's motion to dismiss based on the doctrine of *forum non conveniens*, holding that the locality factor favored dismissal where the incident occurred in Texas and most witnesses and evidence were located there). As in *Larson*, the locality factor strongly favors transfer here because the incident occurred in Winnebago County and Cook County has no meaningful interest in deciding the controversy. The circuit court therefore erred in according this factor "little weight".

¶ 70                    F. Weighing the Relevant Factors

¶ 71    When determining whether to grant a party's motion to transfer venue under the doctrine of *forum non conveniens*, a trial court must weigh all relevant considerations—including the private and public interest factors as well as the plaintiff's choice of forum—to determine whether the chosen venue will best serve the ends of fairness and justice. *Fennell*, 2012 IL 113812, ¶ 17. Here, the circuit court found that plaintiff's choice of forum was entitled to little deference "because Plaintiff does not reside in Cook County and the action did not arise from there." It also found that all of the private interest factors were either neutral or favored transfer because Winnebago County was the more convenient forum for almost all parties, evidence could more easily be accessed there, and it would be less expensive to compel the attendance of willing witnesses there. Nevertheless, the court concluded that "the totality of the factors [favor] retaining Cook County as the forum for this matter." In reaching this conclusion, however, the circuit court failed to give proper weight to several critical public interest factors in its balancing test, including the unfairness of imposing the expenses of trial and the burden of jury duty on residents of Cook County, that the residents of Winnebago County had a significant interest in resolving the case about alleged negligence that occurred in their local hospital, and that court congestion favored transfer. Because the circuit court conceded that plaintiff's choice of forum is entitled to little deference and all of public and private interest factors here are either weighed in favor of transfer to Winnebago County or were neutral, we find that the circuit court abused its discretion when it denied defendants' motion to transfer venue to Winnebago County.

¶ 72    Accordingly, we reverse the circuit court's order denying defendants' motion to transfer and remand with directions to grant defendants' motion and transfer the case to Winnebago County. See, *e.g.*, *Fennell*, 2012 IL 113812, ¶¶ 24, 48-51, 74-75 (reversing and remanding with directions to dismiss the action in favor of sister state forum where the weight of the public and

private interest factors greatly favored dismissal and plaintiff's choice of forum was entitled to little deference, over Justice Kilbride's dissent that the case should be "remand[ed] to the trial court for a more thorough decision considering all *forum non conveniens* factors"); *Monteagudo*, 2023 IL App (1st) 220045, ¶¶ 56-58 (concluding the circuit court abused its discretion when it denied defendants' motion to transfer, stating "from our review of the record and evaluation of the public and private interest factors, we find that the balance of the private and public interest factors weigh strongly in favor of transfer" and therefore reversing and remanding "with directions to transfer the cause to Boone County"); *Smith*, 2024 IL App (5th) 240394, ¶¶ 37-38 (same).

¶ 73                                     III. CONCLUSION

¶ 74    For the foregoing reasons, the judgment of the circuit court is reversed.

¶ 75    Reversed.


¶ 76    JUSTICE ODEN JOHNSON, specially concurring:

¶ 77    While I agree that the case should be reversed, I write separately because I disagree with the majority's position that we should simply send it back for transfer. Rather, I believe that the cause should be remanded with instructions for the circuit court to properly apply the standard for determining whether a motion to transfer based on *forum non conveniens* should be granted.

¶ 78    The standard of review for a *forum non conveniens* decision is abuse of discretion. *Susman v. North Star Trust Company*, 2015 IL App (1st) 142789, ¶ 14 (citing *Langenhorst*, 219 Ill. 2d at 441). A trial court is afforded considerable discretion in ruling on a *forum non conveniens* motion. *Langenhorst*, 291 Ill. 2d at 441. "We will reverse the circuit court's decision only if defendants have shown that the circuit court abused its discretion in balancing the relevant factors." *Id*. at 442.

"A circuit court abuses its discretion in balancing the relevant factors only where no reasonable person would take the view adopted by the circuit court." *Id.* "The issue then, is not what decision we would have reached if we were reviewing the facts on a clean slate, but whether the [circuit] court acted in a way that no reasonable person would." *Susman*, 2015 IL App (1st) 142789, ¶ 18 (quoting *Vivas,* 392 Ill. App. 3d at 657).

¶ 79    Here, I believe the majority's analysis reviewed the facts on a clean slate rather than whether the circuit court's decision was one that no reasonable person would take. The majority weighs each of the factors and makes its own determination as to whether the factor favors transfer rather than simply evaluating the circuit court's finding, which is simply not the standard of review in this case. Since the majority found that the circuit court did not consider the public interest factor related to the fairness in imposing a burden on expense on the residents of a forum, I would remand for the circuit court to consider all relevant factors in determining the motion for transfer of venue.

*Lutzenkirchen v. OSF Healthcare System*, 2025 IL App (1st) 250028

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2024-L-05546; the Hon. Charles S. Beach II, Judge, presiding. |
| **Attorneys for Appellant:** | Jerrod L. Barenbaum, Matthew A. Turley, Eileen M. Caver, and Nathan W. Friedman, of Allen Galluzzo Hevrin Leake, LLC, of Rockford, for appellants OSF Healthcare System and Joyce Cheng. |
| | Jeffry S. Spears, of Faulkner Spears & Chudoba, LLC, of Rockford, for appellant Jennifer Claire Lane. |
| | Scott L. Howie, Sherri M. Arrigo, and Peter L. LeGrand, of Donohue Brown Smyth LLC, of Chicago, for appellants Doris Ore Sosa, Amory Balucating, Rafal Banek, and North American Partners in Anesthesia (Illinois), LLC. |
| | No brief filed for other appellant. |
| **Attorneys for Appellee:** | Brian LaCien and Carla Colaianni, of Smit LaCien LLP, of Chicago, for appellee. |